UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHELLENE D. REICH,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF GLENDALE; GLENDALE POLICE DEPARTMENT; GLENDALE POLICE DEPARTMENT CHIEF OF POLICE, RUSSELL SILVERLING, in his official capacity; GLENDALE POLICE OFFICER BATEMAN (#16083); COUNTY OF LOS ANGELES; THE LOS ANGELES SHERIFF'S DEPARTMENT; LOS ANGELES COUNTY SHERIFF LEROY BACA, in his official capacity; and DOES 1 through 10, inclusive,<br><br>Defendants. | No. CV 01-05834 PA (AJWx)<br><br>ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT<br><br>THIS CONSTITUTES NOTICE OF ENTRY AS REQUIRED BY FRCP, RULE 77(d). |

On August 16, 1999, Plaintiff Shellene Reich ("Reich") was arrested by the Glendale Police Department for child endangerment and possession of drug paraphernalia. This suit was filed on July 2, 2001, and is based on Reich's claim that the police used excessive force during her arrest and that she was not provided proper medical care. Reich has filed this action against defendants Glendale Police Officer Ben Bateman ("Bateman"), Glendale

Chief of Police Russell Siverling[1] ("Siverling"), and Los Angeles County Sheriff Leroy Baca ("Baca"), in their individual capacities. She asserts claims for cruel and unusual punishment, conspiracy, failure to provide appropriate medical treatment, violation of her right to personal security, and failure to train and supervise. Reich also brings a claim pursuant to Monell v. Dept. of Social Services of the City of New York, 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed.2d 61 (1978), alleging that the City of Glendale and the County of Los Angeles had a policy and practice of allowing unconstitutional behavior.

The Court has before it motions for summary judgment, or in the alternative, for summary adjudication by Defendants City of Glendale, Officer Bateman, and Chief Siverling (the "Glendale Defendants") and Defendants County of Los Angeles, Sheriff Baca, and the Los Angeles County Sheriff's Department (the "County Defendants").[2] A hearing on these motions was held August 26, 2002.

The Court, having read and considered the parties' papers, and having heard the oral arguments of counsel, grants the defendants' motion for summary judgment for the following reasons:

I. **STATEMENT OF FACTS**

A. **The Glendale Defendants**

On August 16, 1999, at approximately 4:30 a.m., Officer Bateman was dispatched to 1100 South Central to investigate a report of a possible mentally disturbed woman pushing a baby stroller into oncoming traffic. (Glendale Defendants' Statement of Uncontroverted

---

[1] Erroneously sued as Russell Silverling. There is no evidence that Siverling had any personal involvement with Reich.

[2] The Glendale Police Department neither filed a summary judgment motion nor joined any of the other defendants' motions, and is not named as a defendant to any of Plaintiff's causes of action. Plaintiff's Complaint, however, alleges that the City of Glendale is responsible for supervision, training, instruction, discipline, control and conduct of the Glendale Police Department. Complaint, ¶ 8. Additionally, the Glendale Police Department was not described as a separate party in the Complaint. The Court takes this as an indication that the parties intended to treat the Glendale Police Department and the City of Glendale as a single entity for purposes of this action.

Facts ("GUF") ¶¶ 1-4.)

When Officer Bateman arrived he saw Reich standing in front of a bakery with a baby stroller. (GUF ¶ 7.) Reich was acting erratically, and when Officer Bateman approached her, she told him that she was upset because her child had been molested. (GUF ¶¶ 8, 10-12, 15.) When Officer Leroy Hite ("Hite") arrived on scene he was briefed by Officer Bateman and went to examine the child. (GUF ¶ 20.) When Hite pulled back the blankets in the stroller to examine the baby he found a cigarette-type purse. (GUF ¶ 21.) Reich became upset and stated, "You can look at my baby, but you can't touch any of my things." (GUF ¶¶ 23, 24.) Reich then attempted to move toward Officer Hite, and Officer Bateman positioned himself between them and asked her to step away. (GUF ¶¶ 25, 26.) Reich tried to sidestep Officer Bateman, at which point he grabbed the upper portion of her left arm near the shoulder. (GUF ¶¶ 28, 29.) She yelled to Officer Bateman to take his hand off of her, threatened to sue him for assault, and continued to try to evade him. (GUF ¶ 30.) Officer Bateman told Reich to hold still and let Hite do his job. (GUF ¶ 31.)

Reich then became confrontational, agitated, and aggressive. (GUF ¶¶ 27, 32.) As Officer Bateman continued to block Reich's path, he applied more force. (GUF ¶¶ 33, 35.) Reich continued to struggle to get past him. (GUF ¶ 34.) Officer Hite went to assist Officer Bateman, grabbing Reich's other arm so that each officer had an arm. (GUF ¶¶ 36, 40.) Reich then intentionally locked her knees. The officers pulled her three or four meters to the patrol car. (GUF ¶¶ 42, 43.) Hite put Reich's right arm behind her back so Officer Bateman could handcuff her. (GUF ¶ 40.) Officer Bateman then placed her in the back of his patrol unit and told her that she was not under arrest. He admonished her that her continued failure to follow his commands could result in her arrest. (GUF ¶ 49.) Reich was unable to sit still in the patrol car; she was moving, twitching, moving her feet, and flipping her head and hair around constantly. (GUF ¶ 55.)

Officer Hite subsequently found a broken glass pipe with residue on it in Reich's purse. (GUF ¶¶ 52, 53.) Officers Hite and Bateman examined the baby and found a hernia on the baby's stomach and a diaper rash. Officer Hite transported the baby to the hospital

for treatment. (GUF ¶ 56-57.) Reich was arrested for child endangerment and possession of drug paraphernalia. At approximately 5:30 a.m., Reich was transported to the Glendale City Jail. (GUF ¶¶ 60, 67; County Defendants' Statement of Uncontroverted Facts ("CUF") ¶ 3.) During the booking process, Reich never complained of any injuries and refused medical attention. (GUF ¶¶ 71-72, 74.)

At the Glendale City Jail a drug recognition expert conducted medical screening and a drug evaluation. (GUF ¶¶ 76, 77.) Reich told the drug recognition expert that she had a kidney infection and an infected C-Section incision. (GUF ¶ 78.) At 9:10 a.m. Officer Toby Darby transported Reich to the Los Angeles County Jail, where she was booked at approximately 10:15 a.m. (GUF ¶¶ 79, 80.)[3/]

Reich testified at her deposition that her tail bone was fractured and her front tooth chipped during her arrest. (GUF ¶ 54.) She claims that both injuries occurred during her confrontation with Officer Bateman. However, she presented no evidence that her tooth was chipped or that her tail bone was fractured.

Reich did not dispute that the City of Glendale does not have a policy, custom, or practice of condoning or authorizing excessive force or failing to provide detainees with medical care. (GUF ¶ 91, 92.)

**B.    The County Defendants**

After she was booked at the Los Angeles County Jail, Reich changed into jail blues, was placed in a wheel chair, and spoke with a nurse. (CUF ¶¶ 3, 4.) She saw a physician at approximately 12:10 p.m. and a psychiatrist at 1:32 p.m. before she was placed in the general population. (CUF ¶¶ 5-7.) During her incarceration, Reich received frequent medical care.

Reich spent ten months and twenty days in the County Jail, and was on medication the entire time, though she often refused to take it. (CUF ¶¶ 8, 9, 11.) She had two x-rays

---

[3/]    Plaintiff was transferred to the Los Angeles County Jail because she claimed to have medical problems and the Glendale City Jail does not provide medical treatment, other than first aid. (GUF ¶¶ 81, 82.)

-4-

taken of her back and neither x-ray showed any evidence of a fracture. (CUF ¶¶ 12, 13.) Reich obtained a court order to be seen by an OB/Gyn. The Sheriff's Department complied with the order and she was seen by a Dr. Mallare on September 7, 1999. (CUF ¶ 15.)

On October 13, 1999, December 1, 1999, and February 9, 2000, Reich was examined by an orthopaedist at the Los Angeles County/U.S.C. Medical Center. She was diagnosed with a low back strain and a degenerative disc condition. (CUF ¶¶ 16 – 18.) To alleviate these problems, she was given a lumbar support and a double mattress. (CUF ¶¶ 20, 21.) There is no evidence that she suffered a neurological injury. (CUF ¶ 19.)

In total, Reich was examined by a medical doctor fourteen times, a nurse seventy-four times, a dentist five times, and an optometrist once. She had numerous lab tests conducted. (CUF ¶¶ 22-26, 28.) On July 2, 2000, after she was released, she saw Dr. Awod Anthony, a private physician. She also saw him on July 12, July 27, August 2, and August 22, 2000. (CUF ¶ 29.) Dr. Anthony did not diagnose her back injury, and provided her with no more medical care than she received at the County Jail. (CUF ¶¶ 30, 31.)[4]

There is no evidence that either Officer Bateman or Chief Siverling were involved with Reich's medical care.

## II. LEGAL STANDARDS

### A. Standard Governing Motions for Summary Judgment

To have a successful in a motion for summary judgment, a party must prove that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S. Ct. 2505, 2514, 91 L. Ed. 2d 202 (1986). "[T]he burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case."

---

[4] Sheriff Baca was not present at the scene of the arrest, did not treat Reich at the jail, did not order anyone to deprive her of medical care, and did not engage in a conspiracy to violate her constitutional rights. (CUF ¶ 33.)

-5-

Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554, 91 L. Ed. 2d 265 (1986); see Musick v. Burke, 913 F.2d 1390, 1394 (9th Cir. 1990). To demonstrate that the non-moving party has no evidence, the moving party must affirmatively show the absence of such evidence in the record, either by deposition testimony, the inadequacy of documentary evidence or by any other form of admissible evidence. See Celotex, 477 U.S. at 322, 106 S. Ct. at 2552. The moving party has no burden to negate or disprove matters on which the opponent will have the burden of proof at trial. See id. at 325, 106 S. Ct. 2554.

A nonmoving party's allegation that factual disputes persist between the parties will not automatically defeat an otherwise properly supported motion for summary judgment. See Fed. R. Civ. P. 56(e) (nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial"). "[A] mere 'scintilla' of evidence will be insufficient to defeat a properly supported motion for summary judgment; instead, the nonmoving party must introduce some 'significant probative evidence tending to support the complaint.'" Fazio v. City and County of San Francisco, 125 F.3d 1328, 1331 (9th Cir. 1997) (quoting Anderson, 477 U.S. at 249, 252, 106 S.Ct. at 2510, 2512). If the adverse party does not so respond, summary judgment shall be entered against the adverse party.

**B.    Substantive Standards Governing Claims Under 42 U.S.C. § 1983**

Reich brings each of her claims pursuant to 42 U.S.C. § 1983. Section 1983 creates a cause of action against any person who, acting under color of state law, abridges rights created by the Constitution and laws of the United States. Section 1983 does not itself create substantive rights but instead provides "a method for vindicating federal rights elsewhere conferred." Baker v. McCollan, 443 U.S. 137, 144 n.3, 99 S. Ct. 2689, 2694, 61 L. Ed. 2d 433 (1979). To state a section 1983 claim, a plaintiff must show: (1) that defendants violated the plaintiff's federal rights; and (2) that defendants acted under color of law. See West v. Atkins, 487 U.S. 42, 48, 108 S. Ct. 2250, 2254-55, 101 L. Ed. 2d 40 (1988).

## III. DISCUSSION

Reich alleges claims for relief for cruel and unusual punishment, conspiracy, failure to train and supervise, violation of a personal security interest, and failure to provide adequate medical care against Officer Bateman, Sheriff Baca and Chief Siverling.[5/] Reich concedes that neither Chief Siverling nor Sheriff Baca is individually liable for any acts that caused her injury. Accordingly, the Court will treat Reich's individual claims for relief as claims against only Officer Bateman. To the extent that these claims are made against Chief Siverling and Sheriff Baca in their official capacities, they will be analyzed as claims against the municipal entities.

### A. Reich's Excessive Force Claim

Though Reich's first cause of action is labeled as a cruel and unusual punishment claim, Reich's counsel concedes that this is a Fourth Amendment excessive force claim. See Graham v. Connor, 490 U.S. 386, 396, 109 S.Ct. 1865, 1871-72, 104 L. Ed.2d 443 (1989) (applying a Fourth Amendment analysis to an allegation that police used excessive force during an arrest). Reich alleges that during her arrest while being handcuffed, she was pushed and injured her back and chipped a tooth. Officer Bateman claims that there was no constitutional violation because he did not use excessive force in effecting Reich's arrest. He also claims that even if the amount of force was excessive, he is nevertheless entitled to qualified

---

[5/] Reich concedes that the wrong Defendants are named in each cause of action and, in her opposition to the County's summary judgment motion, requests leave to amend her Complaint to name the "correct defendants" for each cause of action. (Plaintiff's Opposition § 7.)

Reich has not filed a motion to amend, does not indicate who the "correct defendants" are, and Bateman, the only defendant properly named in his individual capacity, is already named as a defendant to every cause of action except for Reich's Monell claim. Additionally, Reich's request to amend was made as part of her opposition to a summary judgment motion filed more than a year after she filed the complaint in this action. Given that the Court has no indication of what amendments would be made, Reich's request for leave to amend is denied. See Nguyen v. United States, 792 F.2d 1500, 1503 (9th Cir. 1986) ("a court ordinarily will be reluctant to allow leave to amend to a party against whom summary judgment has been entered.").

-7-

immunity.

In Saucier v. Katz, 533 U.S. 194 (2001), the Supreme Court established a two-step evaluation of qualified immunity. The analysis contains both a constitutional inquiry and an immunity inquiry. For the constitutional inquiry, courts must determine this threshold issue: "based upon the facts taken in the light most favorable to the party asserting the injury, did the officer's conduct violate a constitutional right?" Jackson v. City of Bremerton, 268 F.3d 646, 651 (9th Cir. 2001); Saucier, 533 U.S. at 201. If there was a constitutional violation, "the second inquiry is whether the officer could nevertheless have reasonably but mistakenly believed that his or her conduct did not violate a clearly established constitutional right." Id.; Saucier, 533 U.S. at 201-05.

The Supreme Court explained that determination of the threshold constitutional inquiry is intended to "set forth principles which will become the basis for a holding that a right is clearly established" in later cases. Saucier, 533 U.S. at 201.

The Court further explained that "[t]he law might be deprived of this explanation were a court simply to skip ahead to the question whether the law clearly established that the officer's conduct was unlawful in the circumstances of the case." Id. Thus, it is necessary for us first to consider the constitutional inquiry.

In this first step of the Saucier analysis, this Court must determine whether Officer Bateman violated Reich's Fourth Amendment right to be free from an excessive use of force . "Under the Fourth Amendment, officers may only use such force as is 'objectively reasonable' under the circumstances." Jackson, 268 F.3d at 651 (quoting Graham v. Connor, 490 U.S. 386, 397 (1989)). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Graham, 490 U.S. at 396. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers violates the Fourth Amendment." Id. (quotation marks and citation omitted). The determination of reasonableness "must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about

-8-

1 the amount of force that is necessary in a particular situation." Id. at 396-97.

2 When determining whether the amount of force used was reasonable, courts must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Id. at 396 (internal quotation marks omitted). To engage in this balancing act, this Court must review the facts in the light most favorable to Reich.

The uncontroverted facts show that "from the perspective of a reasonable officer on the scene," id., Officer Bateman was facing an irrational and highly agitated woman whose child had been endangered and may have been abused or molested. As the officers were attempting to examine the child, Reich repeatedly confronted the officers and attempted to interfere with their investigation.

Notably, on the "intrusion on his Fourth Amendment Rights" side of the scale, this court concludes that placing a belligerent suspect's hands behind her and placing her in a patrol car is a minimal intrusion on her Fourth Amendment interests. On the other side of the scale, the "countervailing governmental interests" are measured by such factors as "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether she is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396. This Court discerns a substantial "governmental interests" in this case. Child endangerment and possession of drug paraphernalia are without question serious crimes, and an irrational agitated suspect poses an obvious and significant danger to the police and others. Moreover, Reich further demonstrated her willingness to impose a life threatening danger upon her own child and the public by her pushing her child into traffic.

We conclude that the balance tips decisively in favor of the governmental interests in this case. The force applied to gain control of Reich and to place her out of harm's way, was patently reasonable and commensurate with what was needed. We recognize that under the right circumstances pushing a suspect into a police car might amount to excessive force, but such circumstances were not present in this case. There was no indication to Officer

1  Bateman that Reich had suffered a debilitating back injury or a chipped tooth, and the law
2  does not hold Officer Bateman accountable for information that only the "20/20 vision of
3  hindsight" can provide. Id. This Court finds it very difficult to imagine that any police
4  officer facing a irrational highly agitated suspect with a child would have acted any
5  differently – at least not without taking the very real risk of getting himself or the child hurt.
6  The need to quickly restrain Reich by handcuffing her and placing her in the backseat of a
7  patrol car was paramount. Thus, the force Officer Bateman used to subdue Reich and take
8  her into custody was "objectively reasonable" and cannot under any view of the evidence be
9  deemed excessive.

Because this Court concludes that Officer Bateman did not violate Reich's Fourth
Amendment rights, the Court need not reach the immunity inquiry. Saucier, 533 U.S. at 201.
However, had this Court concluded that the use of force was not objectively reasonable, the
Court could not conclude that it was a violation of Reich's *clearly established* rights. Id. at
201-02. Moreover, "[t]he concern of the immunity inquiry is to acknowledge that
reasonable mistakes can be made as to the legal constraints on particular police conduct," id.
at 205, and Officer Bateman reasonably could have believed that his conduct was lawful
under the circumstances.[6]

### B. Deliberate Indifference

Reich's third and fourth claims for relief are for failure to provide adequate medical
care. In her third claim, Reich alleges that her Fourteenth Amendment right to personal
security was violated by Officer Bateman's failure to "timely prescribe or provide
appropriate medi-cal treatment for Plaintiff's extensive skeletal injuries. . . ." (Complaint ¶
38.) Reich alleges in her fourth cause of action that her Eighth and Fourteenth Amendment
rights were violated when "the individual defendants subjected Plaintiff to unnecessary and
wanton infliction of pain and physical injury, and the risk of permanent disability. . . ."

---

[6] Defendants initially sought summary judgment on Reich's conspiracy cause of action, but Reich voluntarily dismissed her conspiracy claim.

-10-

(Complaint ¶ 41.)

Plaintiff's burden of proof on a claim for denial of medical care under the Eighth Amendment is set forth by the United States Supreme Court in <u>Farmer v. Brennan</u>, 511 U.S. 825, 114 S.Ct. 1970, 128 L. Ed.2d 811 (1994). First, the constitutional violation "must be, objectively, 'sufficiently serious.'" <u>Id.</u> at 834, 114 S.Ct. at 1977 (quoting <u>Wilson v. Seiter</u>, 501 U.S. 294, 298, 111 S.Ct. 2321, 2324, 115 L. Ed.2d 271). Second, "a prison official must have a 'sufficiently culpable state of mind.'" <u>Id.</u> This state of mind requirement a "is one of 'deliberate indifference' to an inmate's health or safety, . . . ." <u>Id.</u> Plaintiff must show that defendants acted with "deliberate indifference" to her "serious medical needs," thereby effecting the "unnecessary and wanton infliction of pain." <u>Estelle v. Gamble</u>, 429 U.S. 97, 104, 106, 97 S.Ct. 285, 291, 50 L. Ed. 2d 251 (1976). Medical malpractice or an inadvertent failure to provide adequate medical care does not present a constitutional violation. <u>Id.</u> at 105-106, 97 S.Ct. at 292. The same deliberate indifference standard applies to Reich's allegation of a Fourteenth Amendment violation. <u>See</u> <u>Redman v. County of San Diego</u>, 942 F.2d 1435, 1440 (9th Cir. 1991) (requiring deliberate indifference to create governmental liability for the violation of a personal security interest under the Fourteenth Amendment).

There is no evidence that Officer Bateman, or any other individual defendant, acted with deliberate indifference to any of Reich's medical needs. The evidence shows that Officer Bateman inquired if Reich needed medical care, and that medical care was provided. after Officer Bateman was not involved in any of Reich's subsequent medical treatment. Summary judgment is therefore granted as to Reich's third and fourth claims for relief.

C.  **Reich's Monell Claim**

Reich's claims against the City of Glendale and the County of Los Angeles are premised on the City of Glendale and the County of Los Angeles' alleged custom or practice of violating individuals' rights by using excessive force and denying proper medical treatment to detainees. (Complaint ¶¶ 49-50.) <u>See</u> <u>Monell v. Dept. of Soc. Services</u>, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). Reich also brings <u>Monell</u> claims based on the City of Glendale and the County of Los Angeles' failure to properly train their

-11-

employees. (Complaint ¶ 44.)[7]

Liability under Monell arises if there is a constitutional violation resulting from an official custom or policy of a public entity. See Monell, 436 U.S. 658, 98 S. Ct. 2018. An official policy or custom cannot be established by random acts or isolated events. Thompson v. City of Los Angeles, 885 F.2d 1439, 1443-44 (9th Cir. 1989).

Reich has failed to prove that any County defendant violated her constitutional rights.[8] Officer Bateman and Chief Siverling are the only individually named defendants who are employees of the City of Glendale, and Reich has acknowledged that Siverling was not individually involved in any of the underlying events in this case. Because there is no evidence that Officer Bateman was a County or City policymaker, Reich's claim against him must fail.

"There are limited circumstances in which an allegation of a 'failure to train' can be the basis for liability under §1983." Canton, 489 U.S. at 387, 109 S. Ct. at 1204. "[T]he inadequacy of a training policy may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." Id. at 388, 109 S. Ct. at 1204. To impose liability against the City of Glendale or Los Angeles County under Canton, Reich must show: (1) that a City or County employee violated her rights; (2) that the either the City or the County has customs or policies that amount to deliberate indifference (as that phrase is defined by Canton); and (3) that these policies were the moving force behind the employee's violation of Reich's constitutional rights, in the sense that the an appropriate policy would have prevented the

---

[7] Because each of the first five causes of action were plead against Police Chief Siverling and Sheriff Baca in their official capacities, the Court considers those claims to be Monell claims.

[8] Sheriff Baca is the only individually named County defendant and Reich's counsel candidly acknowledged during oral argument that there was no evidence that Baca was personally involved in this incident. Allegations against Baca in his official capacity are redundant since the County is also a defendant. Bender v. Williamsport Area School Dist., 475 U.S. 534, 543, 106 S.Ct. 1326, 1332, 89 L. Ed. 2d 501 (1986); Luke v. Abbott, 954 F. Supp. 202, 203-04 (C.D. Cal. 1997).

1 violation. Gibson v. County of Washoe, Nev., 290 F.3d 1175, 1193-93 (9th Cir. 2002).

2 Because there is no evidence a City of County employee violated Reich's constitu-
3 tional rights, there can be no section 1983 municipal liability. City of Los Angeles v. Heller,
4 475 U.S. 796, 799, 106 S. Ct. 1571, 89 L. Ed. 2d 806 (1986); Fairley v. Luman, 281 F.3d
5 913, 916 (9th Cir. 2002); Quintanilla v. City of Downey, 84 F.3d 353, 355 (9th Cir. 1996).

6 Even assuming Officer Bateman violated Reich's constitutional rights, she has
7 presented no evidence that the City of Glendale maintained a custom, policy, or practice that
8 caused a violation of her constitutional rights. Fairley v. Luman, 281 F.3d 913, 917 (9th Cir.
9 2002). There is no evidence that a policy was in place in the City of Glendale that supported
10 the use of excessive force, and she does not dispute the Defendant's statement that the City
11 of Glendale does not have a policy, custom or practice of condoning or authorizing
12 excessive force. (GUF ¶ 91.)

13 Moreover, to prevail on a Monell claim under a theory of inadequate training, a
14 plaintiff must establish that "the need for more or different training is so obvious, and the
15 inadequacy so likely to result in the violation of constitutional rights, that the policymakers
16 of the city can reasonably be said to have been deliberately indifferent to the need." City of
17 Canton v. Harris, 489 U.S. 378, 390, 109 S. Ct. 1197, 1205, 103 L. Ed. 2d 412 (1989). The
18 City Defendants have presented evidence that Officer Bateman received training in the use
19 of force, and Reich has failed to present evidence that there was an obvious need for
20 additional training. (GUF ¶¶ 88-90.) Accordingly, summary judgment is entered on each of
21 Reich's Monell claims.

## Conclusion

23 For the reasons discussed above, Defendants' motions for summary judgment are
24 granted.

25 IT IS SO ORDERED.
26 DATED: October 6, 2003

Percy Anderson
UNITED STATES DISTRICT JUDGE

-13-